UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Luis N.,

Civ. No. 26-3916 (PAM/ECW)

Petitioner,

v.

**MEMORANDUM AND ORDER**

Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Blanche, Attorney General of the United States; David Venturella, Acting Director, Immigration and Customs Enforcement; David Easterwood, Acting Field Office Director, ICE Enforcement and Removal Operations, St. Paul-Minneapolis; and Ryan Shea, Warden, Freeborn Co. Adult Detention Facility,

Respondents.

---

This matter is before the Court on Petitioner Luis N.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ("Pet." (Docket No. 1.) Petitioner challenges his immigration detention pending removal. For the following reasons, the Court denies the Petition.

**BACKGROUND**

Petitioner is a citizen of Venezuela. (Id. ¶ 1.) On August 27, 2022, he entered the United States in Arizona without inspection. (Decl. of William J. Robinson (Docket No. 8) Ex. A at 1.) That day, Immigration and Customs Enforcement ("ICE") issued him a Notice to Appear and charged him as an alien who was not admitted or paroled or "in possession

of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." (Id.) Petitioner was subsequently released and resided in Florida. (Pet. ¶ 3.) In 2023, he filed for asylum. (Id. ¶ 4.) On August 15, 2024, an immigration judge terminated his removal proceedings without prejudice at his request because he was granted Temporary Protected Status as a Venezuelan. (Id. ¶ 5; Robinson Decl. Ex. E at 3.) On September 4, 2024, Petitioner again filed for asylum, and that application remains pending. (Pet. ¶ 6.) Petitioner's temporary protected status ended on October 3, 2025. (Id. ¶ 7.) He moved to Cedar Rapids, Iowa, in November 2025. (Id. ¶ 8.)

Petitioner received a letter instructing him to report on August 12, 2026, to an ICE office in Florida for an appointment to review his case, and he did so. (Id. Ex. 9.) He was then directed to appear at another appointment on August 19, 2026, in Cedar Rapids, Iowa, for "mandatory reporting and [Notice to Appear] issuance" and he did so. (Id. Ex. 10.) That day, ICE issued him a second Notice to Appear and an I-200, Warrant of Arrest, arrested Petitioner, and brought him to the Hardin County Jail in Eldora, Iowa. (Robinson Decl. Exs. B, C.) Petitioner was subsequently transferred to the Freeborn County Adult Detention Center in Albert Lea, Minnesota, where he remains. (Pet. ¶ 11.)

**DISCUSSION**

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." Abdulkadir A. v. Sessions, Civ. No. 18-2353, 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (Bowbeer, M.J.) (citing Preiser v. Rodriguez, 411 U.S. 475, 485 (1973)), R. & R. adopted, 2019 WL 201761 (D. Minn. Jan. 15, 2019) (Brasel, J.). Petitioner asks the Court to order his

immediate release or grant him an individualized bond hearing and alleges Respondents violated 8 U.S.C. § 1357(a) and 8 C.F.R § 236.1 and his due process rights under the Fifth Amendment. Respondents contend that his detention is mandatory pending removal proceedings under § 1225(b)(2) and that he is not due any additional process.

**A. Petitioner's Detention is Mandatory**

Petitioner's detention is mandatory under § 1225(b)(2). "8 U.S.C. § 1225(b)(2)(A) . . . authorizes detention for an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Avila v. Bondi, 170 F.4th 1128, 1132 (8th Cir. 2026) (internal quotation marks omitted). Petitioner presents no evidence that he is not an "applicant for admission" or that he is clearly entitled to stay in the United States. See 8 U.S.C. § 1225(b)(2)(A). The record is clear that Petitioner was detained upon his entry into Arizona and processed for removal as an alien present in the United States who has not been admitted or paroled. Petitioner provides no facts demonstrating that anything has altered the Department of Homeland Security's initial determination. His detention is thus mandatory.

**B. Petitioner's Arrest was Lawful**

Section 1225(b) makes no mention of a warrant requirement. Even so, Respondents had an I-200, Warrant of Arrest for Petitioner. Petitioner alleges that Respondents served the Warrant of Arrest before serving or issuing the Notice to Appear, and therefore that the Warrant was invalid. Section 236.1(b)(1) explains that an alien may be arrested pursuant to a Form I-200, Warrant of Arrest "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R.

§ 236.1(b)(1). The regulation does not require the Notice to Appear be served before the Warrant is served, and Petitioner fails to point to any authority indicating that a Notice to Appear must be served to be valid. Although § 1229(a) requires that the Notice to Appear be served on the alien, it does not state that it must be served before any warrant. See 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record . . . ).").

The letter Petitioner received instructing him to report to an ICE office on August 19, 2026, stated that the reason for the appointment was issuing a Notice to Appear. (Pet. Ex. 10.) Indeed, the Notice to Appear and Warrant of Arrest were issued by "J.L." on the day that Petitioner had his ICE appointment in Cedar Rapids, Iowa, and served by "C.Z." that same day. (Robinson Decl. Exs. B, C.) The Warrant issued before he was arrested, which is all the law requires. See Rey A. v. Blanche, Civ. No. 26-2287, 2026 WL 1678230, at *4 (D. Minn. May 29, 2026) (Docherty, M.J.), R. & R. adopted, Rey A. A. F. v. Blanche, Civ. No. 26-2287, 2026 WL 1683219 (D. Minn. June 10, 2026) (Brasel, J.) ("[T]he Fourth Amendment speaks of the issuance of warrants, not of the service of warrants.").

The only fact that Petitioner supplies in support of his argument that the Notice to Appear issued after the Warrant is that the Notice to Appear indicates that Petitioner's address is the Hardin County Jail in Eldora, Iowa. (Pet. Ex. 12.) Petitioner fails to acknowledge that Respondents informed him in writing before the August 19 appointment that the purpose of the appointment was to issue a second Notice to Appear. Petitioner's

previous immigration proceedings, including his first Notice to Appear, provided the ICE officials with knowledge that Petitioner was subject to mandatory detention and would thus be immediately taken into custody. Moreover, they "interviewed" him at the August 19 appointment, again confirming as much. (Robinson Decl. Ex. E at 2.) The I-213, Record of Deportable/Inadmissible Alien completed by J.L. included the history of his immigration proceedings and the record of the August 19 events. Further, both the Warrant and Notice to Appear were issued by the same individual on the same day and served by a different individual that same day. Based on the language in § 1225(b)(2), § 1229(a), and § 236.1(b)(1) and the factual record, the Court does not find that the Notice to Appear or Warrant are invalid.

Petitioner's arrest was lawful and mandated by statute. Section 1225(b)(2)(A) states that if an immigration officer examines "an alien who is an applicant for admission . . . and determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, that alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The warrantless arrest statute to which Petitioner refers, 8 U.S.C § 1357(a), does not require such a determination. Rather, under § 1357(a), an immigration officer may arrest an alien without a warrant if the officer has mere "reason to believe" that the alien is in the United States in violation of immigration law and is likely to escape before a warrant can be obtained. See id. § 1357(a)(2). "'Reason to believe' . . . means constitutionally required probable cause." United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Therefore, § 1357(a) requires that the officer must also believe the alien to be a flight risk. Whereas under § 1225(b)(2)(A), when an immigration official has

determined that "the alien is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2), "the assessment of flight risk is not needed because Section 1225 requires detention." Rivera Vasquez v. Blanche, Civ. No. 26-1992, Docket No. 8 at *3, (D. Minn. Apr. 20, 2026) (Traynor, J.). Permitting an alien "subject to mandatory detention to go free would 'require the courts to close their eyes to ongoing violations of the law.'" Id. (quoting INS v. Lopez-Mendoza, 468 U.S. 1032, 1046 (1984)).

Here, there is no doubt that the immigration officer who completed the Record of Deportable/Inadmissible Alien, Warrant of Arrest, and Notice to Appear had determined that Petitioner was an applicant for admission who is not clearly and beyond a reasonable doubt entitled to be admitted, making Petitioner's detention pending removal proceedings mandatory under § 1225(b)(2). Petitioner fails to demonstrate that his arrest was unlawful under the Fourth Amendment or 8 U.S.C. § 1357(a).

In any event, the Court is unpersuaded by Petitioner's argument that release is the proper remedy when he is in deportation proceedings. See Singh v. Sommer, No. 7:26-CV-5013, 2026 WL 2042296, at *3 (D. Neb. July 15, 2026) ("[I]t has been held that an arrest exceeding statutory authority doesn't void the subsequent detention and deportation proceedings.") (collecting cases). And because § 1225(b)(2) requires detention, Petitioner's arguments as to a bond hearing are meritless.

**C. Petitioner's Constitutional Claim Lacks Merit**

Petitioner argues that if he is not entitled to his immediate release, he is entitled to a bond hearing. He alleges that Respondents violated his due process rights under the Fifth Amendment and argues that he is entitled to an individualized assessment regarding his

detention, asking the Court to employ the balancing test laid out in Mathews v. Eldridge, 424 U.S. 319, 333 (1976). The Eighth Circuit has determined that "Zadvydas and Demore have already done whatever balancing is necessary" for detainment decisions. Banyee v. Garland, 115 F.4th 928, 933 (8th Cir. 2024). "The government can detain an alien for as long as deportation proceedings are still 'pending.'" Id. (quoting Demore v. Kim, 538 U.S. 510, 527 (2003)). Petitioner is not entitled to due process beyond what the statute describes, and the statute does not mention bond hearings. His due process arguments are foreclosed by Avila and he received the process he is due.

**D. Pursing Asylum Does Not Provide Lawful Status**

Finally, contrary to Petitioner's assertion, seeking asylum does not bestow lawful status on Petitioner. Indeed, he cites no authority for this proposition. Petitioner's asylum application supports that he is an applicant for admission who is "seeking admission" in the United States. See 8 U.S.C. § 1101(a)(13)(A); Chen v. Almodovar, 815 F. Supp. 3d 314, 321–22 (S.D.N.Y. 2025) ("If actively 'seeking admission' is a distinct requirement for mandatory detention pursuant to [§] 1225, seeking asylum is 'seeking admission,' within the meaning of the statute, since 'admission' is defined in terms of 'lawful' status, 8 U.S.C. § 1101(a)(13)(A), not physical presence on U.S. soil.").

The Court concludes that Petitioner is not entitled to the habeas relief that he seeks, and thus denies his Petition.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1. The Petition (Docket No. 1) is **DENIED**; and

2. This action is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 29, 2026

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge